MOSES SCHWARTZ, Individually and Doing Business as BRAZIL SALES CO., Respondent, v MERCHANTS BANK OF NEW YORK, Defendant, and PAN AFRICAN BANK LIMITED, Appellant. (And a Third-Party Action.)

First Department, June 11, 1985

### APPEARANCES OF COUNSEL

*Carla E. Craig* of counsel (*James F. Gleason, Jr.,* with her on the brief; *Hertzog, Calamari & Gleason,* attorneys), for appellant.

*Michael J. Roberts* of counsel (*Roberts & Roberts,* attorneys), for respondent.

### OPINION OF THE COURT

ASCH, J.

Plaintiff made shipments of merchandise to two consignees in Nigeria. To assure payment for the goods plaintiff engaged defendant, The Merchants Bank of New York, to act as his local banking representative in connection with the processing and collection of the necessary financing documents and sight drafts. Merchants designated defendant-appellant Pan African Bank Limited as its Nigerian correspondent. Although the consignees received goods valued at $240,610.19, plaintiff never received any funds. Defendant Pan African issued a check in connection with these transactions in the amount of $88,141.01, drawn upon Chase Manhattan Bank, N. A., payable to "Merchants

Bank of New York A/C Brasil Sales Company". For some reason this check came into the possession of third-party defendant Herman Hairston, whom Merchants permitted to open an account in the name of "Brasil Sales Company c/o Herman R. Hairston" and to deposit the check into this account. Plaintiff never received any part of the funds due him under this subject sight draft.

Plaintiff's amended complaint against Merchants and Pan African made detailed allegations including a jurisdictional predicate against Pan African, a Nigerian entity, claiming it was subject to long-arm jurisdiction under CPLR 302 (a) (1) or (3). Plaintiff obtained an order of attachment against Pan African which froze funds on deposit at Chase Manhattan. Special Term granted a motion by plaintiff for an order dismissing Pan African's second and third affirmative defenses relating to lack of jurisdiction and denied a cross motion by Pan African to vacate the order of attachment. This denial of the cross motion by Pan African was erroneous and we therefore modify to vacate the attachment.

Pan African is a corporation organized under the laws of the Federal Republic of Nigeria, and is wholly owned by the Rivers State, a political subdivision of the Federal Republic of Nigeria.

Foreign Sovereign Immunities Act (FSIA) § 1609 states: "Subject to existing international agreements * * * the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter" (28 USC § 1609). As Special Term noted, Pan African's assertion that it is a "foreign state" for the purposes of this act since it falls within the act's definition of a "foreign state" (§ 1603 [a]) was unopposed.

Section 1610 of the FSIA provides:

"1610. Exceptions to the immunity from attachment or execution

"(a) The property in the United States of a foreign state, as defined in Section 1603 (a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State * * * if —

"(1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or

"(2) the property is or was used for the commercial activity upon which the claim is based" (28 USC § 1610).

Although plaintiff asserts this section provides a basis for sustaining the attachment herein, it is clear that the section authorizes only "attachment in aid of execution * * * upon a judgment entered by a court", i.e., a postjudgment attachment of property. Thus, section 1610 (c) explicitly states: "No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment".

The legislative history of FSIA § 1610 (a) provides that "[t]he term 'attachment in aid of execution' is intended to include attachments * * * under applicable Federal or State law to obtain satisfaction of a judgment" (*1976 US Code Cong & Admin News,* at 6604, 6627).

Section 1610 (d) sets forth the sole narrow exception to a foreign State's absolute immunity from prejudgment attachment, providing:

"The property of a foreign state * * * used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action * * * if —

"(1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, and

"(2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction."

Since we are concerned with a prejudgment attachment, section 1610 (d) governs (*see, O'Connell Mach. Co. v M.V. "Americana",* 734 F2d 115, 117, *cert denied* ⎯ US ⎯, 83 L ed 2d 701, where the Second Circuit held that prejudgment attachment is permitted under the FSIA only under the circumstances set forth in section 1610 [d]).

Pursuant to the mandate of section 1610 (d), prejudgment attachment of property is authorized only when a foreign State has "explicitly" waived immunity from such attachment *and* when the purpose of the attachment is to secure payment of a judgment that may be entered in the future. Therefore, even assuming, arguendo, that plaintiff's assertions are correct and Pan African has engaged in commercial business in New York

and that the attachment of its assets was for security purposes, plaintiff would still have no right to a prejudgment attachment order.

Pursuant to section 1610 (d) of the FSIA, waiver of immunity must be "explicit" in the commonsense meaning of the term, i.e., the asserted waiver must demonstrate unambiguously the foreign State's intention to waive its immunity from prejudgment attachment (*S&S Mach. Co. v Masinexportimport,* 706 F2d 411, *cert denied* 464 US 850). Section 1610 (a), dealing with postjudgment attachments, requires a court to give effect to both "explicit" and "implicit" waivers of immunity. However, since subdivision (d) includes only "explicit" waivers, it is evident Congress meant to preclude unintended or constructive waivers of immunity in prejudgment attachments (*S&S Mach. Co. v Masinexportimport* (*supra,* at p 416). As the Second Circuit noted, "the purpose of § 1610 (d) (1) is to preclude inadvertent, implied, or constructive waiver in cases where the intent of the foreign state is equivocal or ambiguous" (*Libra Bank v Banco Nacional,* 676 F2d 47, 49).

It is therefore clear from the terms of the statute and the case law that Pan African is immune from prejudgment attachment absent an explicit waiver of that immunity. This immunity is fully applicable to orders of attachment issued by the courts of New York (*see, Verlinden B.V. v Central Bank,* 461 US 480, 495, n 22). Since no claim of explicit waiver has been made and the record is devoid of any suggestion of such waiver, Special Term should have vacated the attachment herein.

Accordingly, the order of the Supreme Court, New York County (Tyler, J.), entered on July 26, 1984, which, *inter alia,* denied defendant-appellant Pan African's cross motion to vacate the order of attachment, should be modified, on the law, to grant the cross motion, and otherwise affirmed, with costs and disbursements.

KUPFERMAN, J. P., FEIN and ROSENBERGER, JJ., concur.

Order, Supreme Court, New York County, entered on July 26, 1984, unanimously modified, on the law, to grant the cross motion to vacate an order of attachment, and otherwise affirmed. Appellant shall recover of respondent $75 costs and disbursements of this appeal.